UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI DeWILDE,

    Plaintiff,

v.

ORGILL, INC.,

    Defendant.
                               /

Case No. 11-13370

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]**

Plaintiff's second amended complaint alleges only ordinary negligence, not claims of product liability. (Pl.'s 2d Am. Compl.; Pl.'s Resp. at 9.) This matter is now before the Court on Defendant's motion for summary judgment [29].

This Court agrees with Plaintiff that Defendant Orgill owed her a duty to use reasonable care in loading and securing merchandise on a pallet so as to avoid the foreseeable risk of injury to those, like Plaintiff, who unpacked merchandise loaded on that pallet. Because genuine issues of material fact exist on Plaintiff's claim that Defendant's negligence in loading and securing merchandise, in particular rebar, on a pallet for delivery to the Marine City, Michigan Lumber Jack and that Defendant's negligence was the proximate cause of her claimed injury, Defendant's motion for summary judgment is DENIED.

Plaintiff Lori DeWilde, now 54, worked as a shipping and receiving clerk at the Marine City, Michigan location of Lumber Jack Building Centers, a small hardware business with

multiple Michigan stores. She had been employed there for five years before suffering the shoulder injury on October 27, 2010 that gave rise to her negligence claim.

Defendant Orgill, Inc. is a wholesale distributor that regularly delivers hardware supplies, including rebar, to Lumber Jack for retail sales. Rebar is a piece of steel used for construction purposes that is typically six feet long and a half inch in diameter. Defendant Orgill shipped the rebar, in a vertical position, along with a mix of other products on a 24 inch by 40 inch pallet, that was then covered in shrink/stretch wrap. (Pl.'s Resp., Ex. A, 10/27/10 photographs of shrink-wrapped pallet.)

In her deposition, Plaintiff described how her shoulder was injured as she unwrapped the Orgill pallet containing the rebar using the "banana peel" top-down, cut-and-peel method that Lumber Jack had taught her to use:

Q: – you were aware that there was rebar in it, correct?

A: Aware it was in there, yes.

Q: You could see the rebar with your own eyes, correct?

A: Yes, I could.

Q: And the rebar is in the corner of the pallet sticking straight up and down, right?

A: Outside corner, yes.

Q: But it's clearly visually apparent to you, right?

A: Yes. Not within the body but at the top, yes.

Q: Okay. I mean when you approached the Orgill pallet there was no doubt in your mind that there was rebar in plain view, right?

A: Yes.

Q: Okay. Did you get any portion of this pallet unwrapped before you were struck by the rebar?

2

A: Four to six inches. It's called a banana peel as they say in shipping and receiving. It's cut and peel. So you cut short distances and take off for security.

Q: So you're working from the top down?

A: Correct.

Q: Okay. You take off a little bit of the shrink wrap, remove the product that has been freed by the cutting?

A: Correct.

Q: And then you keep moving your way down?

A: Correct.

Q: Okay. Well, explain to me how this accident happened.

A: I did what I usually do. I started at the top. And right at the corner here, I can't remember which corner, and the rebar after, about four to six inches, tore right through and tumbling individually.

I was unaware that it was not shrunk wrap individually itself to secure as it had been before. 'Cause I couldn't see. Saw the rebar, but couldn't see that it was not shipped properly. And so, of course, it tore through, this is a tight woven thing, you know that.

* * *

And tried to avoid it from hitting my face obviously and it hit the shoulder.

Q: Okay. In your experience unwrapping Orgill pallets that contain rebar --

A: Correct.

Q: – was the rebar always within the pallet standing straight up and down?

A: No. It should have been in the middle, secured by other things.

Q: Okay. I guess my question's a bad one. When Orgill would deliver a pallet with rebar, okay?

A: Yes.

3

Q: Was the rebar always standing straight up and down somewhere in that pallet?

A: Correct.

Q: Okay. What you're saying is it should have been in the middle, not on the edge?

A: Well, that was discussed at a later date. Being in shipping and receiving for five years this is always how they did it.

Q: Um-hum.

A: There's been problems with it before. Unaware of this incident here because I couldn't see --

Q: Oklay. With regard --

A: – thought it was secured.

\* \* \*

Q: Okay. And so what you're telling me, Ms. DeWilde, is on 10-27-10 you cut about four to six inches of the shrink wrap off the top of the pallet --

A: Correct.

Q: – removed some goods?

A: I couldn't even get to that. I – you're asking me what I did that day?

Q: Yes.

A: No. There were nothing removed. The rebar ripped immediately.

Q: So you were injured before you were able to get any goods off?

A: Correct.

Q: Okay. What was your plan? Were you going to take the rebar out first or were you going to unpack something else?

A: No, that rebar can't get out first.

Q: Why not?

A: Because you have to take stuff off. I, without using a ladder, I was never taught that way, you just don't do it that way. You have to go down to where you can grasp that rebar to pull it out. So this being too tall, I'm only 5, 2, I could not, without taking the peel and remove, effect, could not get to it yet.

\* \* \*

Q: When you approached this Orgill pallet depicted in Exhibit 1, --

A: Correct.

Q: – did you think the rebar posed a danger of any kind?

A: No.

Q: In other words, you thought it was secure?

A: Yes, I did.

Q: It looked secure to you?

A: It looked, yes.

Q: When you were struck on the left shoulder by the rebar, did you see it coming?

A: Yes. I tried to avoid my face.

Q: I mean did you see it coming at the last second or did you see it falling the entire way?

A: Oh, that's too hard to speculate. I'm sorry. I, it was such a fast rip motion, yes, it was ripping so fast I tried to dodge it. And if I didn't dodge it, it would have struck my face and instead it struck my shoulder so.

\* \* \*

Q: What I want to know was --

A: 'Cause that rebar was coming at me.

Q: – what you did before you got hit, okay? Not what happened to you after you got struck. I want to know what you did before you got hit?

A: I just told you. I was going to get out of the way, to my best of my knowledge, trying to avoid my face, you know. Don't forget when you're talking about steel rebars, it's very heavy. It's within a second that that's, within seconds it's going to tear through that shrink wrap.

I don't have time to speculate how to move, where to move, I mean it's just bam, boom, get my face out of the way and that's where it struck me and down the side. I had a scrape down this side of my shoulder also. So --

\* \* \*

Q: Okay. Now were you hit by an individual rod of rebar or several rods packaged together or do you know?

A: Several rods.

Q: Do you know how many?

A: In. I want to eliminate the packaged together 'cause I don't know if they were --

Q: Okay.

A: – they tumbled so to my knowledge I'm remembering them not shrunk wrap individual but – because it was a tumble effect. It was not a, you know, when, when we took several other pictures, they were separated, they were not together.

Q: Okay.

(Pl.'s Dep. at 78-88.)

Because genuine issues of material fact exist on Plaintiff's claim that Defendant's negligence in loading and securing merchandise, in particular rebar, on a pallet for delivery to the Marine City, Michigan Lumber Jack and that Defendant's negligence was the proximate cause of her claimed injury, Defendant's motion for summary judgment is DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated:  October 12, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 12, 2012, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager